**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

UNITED STATES OF AMERICA

      *Plaintiff*,

  v.

GRUPO VERZATEC S.A. DE C.V.,

STABILIT AMERICA, INC.,

CRANE COMPANY,

and

CRANE COMPOSITES, INC.,

      *Defendants.*

**COMPLAINT**

The United States of America brings this civil action to stop Grupo Verzatec S.A. de C.V. ("Verzatec") from buying its closest competitor, Crane Composites, Inc. ("Crane"). Verzatec and Crane are the two largest producers of pebbled fiberglass reinforced plastic ("FRP") wall panels in the United States, collectively accounting for over 80 percent of pebbled FRP wall panel sales. Today, these rivals compete head-to-head in the production and sale of pebbled FRP wall panels. Direct competition between Verzatec and Crane has yielded tangible benefits for retailers and distributors in the form of lower prices and higher quality. These benefits have been passed on to small and medium-sized businesses, such as convenience stores, local groceries, gas stations, and restaurants. The proposed acquisition would end this rivalry, allowing Verzatec—in the words of its senior management team—to achieve "FRP dominance"

and to exert "pricing power and control" in the pebbled FRP wall panel market. Unless enjoined, this illegal acquisition would further consolidate an already concentrated market and leave businesses across the United States under the thumb of a monopolist with the incentive and ability to raise prices and reduce quality, choice, and innovation. For the reasons alleged below, the proposed acquisition violates both Section 7 of the Clayton Act, 15 U.S.C. § 18, and Section 2 of the Sherman Act, 15 U.S.C. § 2, and must be stopped.

## I. INTRODUCTION

1. Pebbled FRP wall panels are an important and ubiquitous building material in the United States. For decades, U.S. businesses have used pebbled FRP wall panels as a covering in high-traffic spaces because it is affordable, durable, and easy-to-clean.

2. As Verzatec recently presented to its largest customer, "FRP expanded across the U.S. as a result of widespread applications in kitchens and restrooms in almost every fast food establishment, gas station and casual dining restaurant." Verzatec and Crane manufacture and sell pebbled FRP wall panels to home-improvement retailers and distributors for a wide range of end uses including building and construction projects for national fast food chains, and local "mom-and-pop" convenience store owners.

3. Defendants Verzatec and Crane are the two largest producers and suppliers of pebbled FRP wall panels in the United States. By its own account recorded in a 2021 internal competitive analysis, Verzatec estimated that Verzatec and Crane control 92 percent of all FRP sales in the United States, including the pebbled FRP wall panels at issue in this action.

4. Defendants compete vigorously with each other and are each other's closest competitors to produce and supply pebbled FRP wall panels to retailers and distributors. For years, Verzatec has acknowledged that it faces "fierce competition" from its "biggest

competitor" Crane. Similarly, Crane has long described Verzatec as its "primary competitor." As the two largest pebbled FRP wall panel suppliers in the United States, Verzatec and Crane closely monitor each other's competitive moves, cognizant that any disparity in pricing or quality could result in lost sales to the other firm. In particular, when Crane attempts to raise its prices, it closely monitors Verzatec's response, knowing that if Verzatec does not match the increase, pressure from customers and the threat of lost sales will require Crane to make concessions. For example, in June 2021, Crane's president reported to his boss at Crane Company that Verzatec had not followed Crane's recent increase and, as a result, an important distributor complained about the price gap, and threatened to switch to Verzatec "if price[s] were not reduced soon." This close, head-to-head competition has resulted in lower prices and better quality and terms of service for retailers and distributors, who play these rivals off of one another to negotiate a better deal. In turn, American businesses benefit from this competition when they use pebbled FRP wall panels for their commercial building projects.

5. Verzatec's internal documents confirm that Verzatec is acquiring Crane's FRP business to eliminate competition in FRP—and to eliminate Verzatec's closest FRP competitor. For example, in a presentation to the CEO, Verzatec's senior management stated that the acquisition of Crane's FRP business by Verzatec would "modify the structure of the industry and make it more profitable," "reduce the number of participants in the market," and "'control' a competitor." Indeed, Verzatec's senior management identified these anticompetitive effects as the basis to support its acquisition of Crane's FRP business. The internal evaluation concluded that by acquiring Crane, Verzatec would "eliminate margin erosion caused by fierce competition," "[a]void potential 'new competitor,'" and gain "pricing and market control" in the FRP business. Against this backdrop, Verzatec's CEO determined that acquiring Crane was "the

right step for consolidating FRP in America" and recommended the acquisition to Verzatec's Board of Directors.

6. Section 7 of the Clayton Act prohibits mergers and acquisitions that are likely to substantially lessen competition and "tend to create a monopoly." If consummated, Verzatec's acquisition of Crane's FRP business would eradicate the competition that exists today in the market for pebbled FRP wall panels and would result in the combined entity possessing monopoly power. The acquisition would inflict competitive harm in a market for a critical building material for American businesses across the country—including small and medium-sized businesses such as convenience stores, local groceries, gas stations, and restaurants.

7. Allowing Verzatec to eliminate Crane as a competitor would also violate Section 2 of the Sherman Act, 15 U.S.C. § 2, which prohibits monopolization of any relevant line of commerce. The proposed transaction violates Section 2 because it would allow Verzatec to unlawfully monopolize the market for the production and sale of pebbled FRP wall panels in the United States by eliminating its most significant competitor and controlling around 80 percent of the market.

8. Verzatec's proposed acquisition of Crane would eliminate the vigorous competition that exists between the companies today and allow Verzatec to accomplish its anticompetitive objective of achieving "FRP dominance." The proposed acquisition also results in Verzatec gaining monopoly power in the market for the production and sale of pebbled FRP wall panels. With control of approximately 80 percent of the pebbled FRP wall panel market in the United States after the transaction, Verzatec would have the power to raise prices, reduce quality, and provide inferior service to wholesalers and distributors of pebbled FRP wall panels. Ultimately, this acquisition harms millions of American businesses, including countless

restaurants, grocery stores, convenience stores, and other commercial establishments. For the reasons set forth in this complaint, Verzatec's proposed acquisition of Crane is illegal and must be stopped.

## II. DEFENDANTS AND THE PROPOSED ACQUISITION

9. Verzatec is a privately held Mexican corporation with its headquarters in Monterrey, Mexico. Its revenues are not public. Stabilit America, Inc. is a wholly-owned subsidiary of Verzatec with its headquarters and principal place of business in Moscow, Tennessee. Verzatec and its subsidiary, Stabilit America, manufacture pebbled FRP wall panels on two high-speed, continuous-process production lines located in Monterrey, Mexico, and Moscow, Tennessee. Verzatec sells different kinds of building products and wall coverings, including pebbled FRP wall panels in the United States through Verzatec, Stabilit America, and business units, Marlite and Nudo. They sell pebbled FRP wall panels under several brand names, including Glasliner and Fiberlite.

10. In addition to pebbled FRP wall panels, Verzatec produces and sells other types of wall coverings, including higher-priced FRP wall panel products with different thicknesses, finishes, and fire-ratings. It also produces even higher-priced "value-added" and decorative FRP products that may be digitally printed with designs, logos or colors, or that mimic the appearance of tile and other wall coverings.

11. Crane Company is a Delaware corporation headquartered in Stamford, Connecticut. Crane Company's wholly-owned subsidiary, Crane Composites, Inc., manufactures pebbled FRP wall panels on two high-speed, continuous-process production lines located in Joliet, Illinois, and Florence, Kentucky. In 2020, Crane Composites' total sales were $176 million. Crane Composites sells different kinds of wall coverings, including pebbled FRP wall

5

panels in the United States, and is headquartered and has a principal place of business in Channahon, Illinois. Crane Composites sells pebbled FRP wall panels in the United States under several brand names, including Glasbord and Sequentia.

12. Pursuant to an agreement dated May 16, 2021, Verzatec, by and through its subsidiary, Stabilit America, Inc., agreed to acquire its largest competitor, Crane Composites, Inc., from Crane Company in an all-cash transaction valued at approximately $360 million.

### III.    INDUSTRY BACKGROUND

#### A.    FRP Wall Panels

13. FRP is a composite material made of polyester resin reinforced with fiberglass. For decades, FRP has been used to produce thin, utilitarian wall coverings. A variety of commercial businesses, such as restaurants, grocery stores, convenience stores, retail outlets, hotels, gyms, hospitals, schools, correctional facilities, car washes, meat and dairy facilities, clean rooms, and laboratories, use FRP wall panels in high-traffic areas where durability and sanitary performance are of paramount importance. As Verzatec's website states, "[FRP wall panel] surfaces are tough, strong, and easy to clean. [They are] ideal for high traffic areas where hygiene and easy maintenance are a must." A Verzatec brochure advertises FRP as "economical to install, easy to maintain and a breeze to sanitize over and over again." Crane similarly boasts that its "FRP wall panels for interior use combine unsurpassed hygienic characteristics with durability" and "comply with common building, fire and food safety codes."

14. Defendants produce a variety of FRP wall panel products, including the pebbled FRP wall panels at issue in this Complaint. They have different thicknesses, finishes, and fire-ratings that affect their affordability and potential commercial uses. Pebbled FRP wall panels are the most popular and most commonly installed FRP wall panels. They have a pebble-textured-finish, a Class-C fire-rating, and a thickness of 0.09 inches. They are the most significant type of

FRP panels sold in the United States. National and regional home-improvement retail chains refer to the pebbled FRP wall panels they stock as "plastic composite siding panel made of polyester resin with a cracked ice surface," "impact resistant wall panel with an embossed finish and rigid design," or "textured FRP wall panel." The pebbled-textured panels are distinguishable from the Defendants' more expensive varieties of flat FRP panels that feature smooth or decorative finishes or those with enhanced fire resistance. Retailers typically sell these higher priced FRP panels as a special order. For convenience and simplicity, this Complaint refers to the pebbled-texture, Class-C, 0.09 FRP walls panel as "pebbled FRP" wall panels.

15. Defendants Verzatec and Crane sell pebbled FRP wall panels to their wholesale customers through retail and distribution channels. The retail channel is comprised of national and regional home-improvement retail chains, accounting for 40 to 50 percent of Defendants' pebbled FRP wall panel sales. The vast majority of customers purchasing pebbled FRP wall panels at home-improvement retail chains are professional contractors.

16. The distribution channel consists of building-supply distributors that range from single location, family-owned firms to regional or national distributors with dozens or hundreds of local outlets. To meet the needs of construction contractors, Verzatec and Crane have relationships with hundreds of building-supply distributors throughout the country. Verzatec and Crane offer these distributors financial incentives such as rebates, special pricing, and freight concessions to have their pebbled FRP wall panel brand stocked in each of the distributor's locations.

## IV. RELEVANT MARKET

**A.  The Production and Sale of Pebbled FRP Wall Panels Is a Relevant Product Market**

17.    Courts define a relevant market as a tool for understanding the potential anticompetitive effects of an acquisition.  A relevant market has both a product and a geographic dimension.

18.    The proposed transaction would harm competition in the relevant market for the production and sale of pebbled FRP wall panels in the United States.  One tool used to assess the extent to which products are substitutes, and thus whether they belong in the same market, is known as the "hypothetical monopolist" test.  This test asks whether a firm that is the only seller of a product (a hypothetical monopolist) could profitably impose a price increase—specifically, a small but significant and non-transitory increase in price ("SSNIP")—on at least one product sold by the merging firms in the relevant product market.  As described below, pebbled FRP wall panels sold to customers in the United States satisfies this hypothetical monopolist test.

19.    The sale of pebbled FRP wall panels to United States customers constitutes a relevant antitrust market and line of commerce under Section 7 of the Clayton Act and Section 2 of the Sherman Act.  Pebbled FRP wall panels are pebble-textured, Class C fire-rated, and 0.09" thick.  No reasonably interchangeable substitutes exist for pebbled FRP wall panels.

20.    Other more-expensive FRP wall panel products produced by the Defendants, including "smooth-finish," Class A fire-rated, or decorative-finish FRP wall panels are not reasonable alternatives to pebbled FRP wall panels.  These higher-value products have distinct characteristics that separate them from pebbled FRP wall panels, such as a higher fire-rating, or aesthetic characteristics that mimic the look of other wall covering materials, and as a result,

8

higher-value FRP wall panels are at least 50 percent more expensive than pebbled FRP wall panels.

21. There are also a variety of wall covering materials in the broad category of building products including paint, ceramic tile, wallpaper, stainless steel, and types of plastic panels that are not reinforced with fiberglass (typically called "NRP" panels). Each of these alternative wall covering materials have different strengths and weaknesses based on their particular product characteristics and performance, but they do not provide the distinctive combination of product characteristics and proven performance in terms of durability, impact-resistance, cleanability, and ease-of-installation that pebbled FRP wall panels provide. For instance, paint is easily chipped or damaged and does not clean well. Tile is more expensive and time consuming to install, is less impact resistant, and is difficult to clean and maintain over time. Stainless steel is much more expensive than pebbled FRP wall panels. NRP damages more easily than pebbled FRP wall panels and is a "poor performer in cleanability and abrasion resistance" due to "a soft surface" and has a higher rate of thermal expansion than FRP, which can lead to "bulges in wall, incurring costly replacement."

22. Architects and designers specify, and construction contractors and business owners purchase and rely on, pebbled FRP wall panels because of their superior value and performance compared to alternative materials such as paint, ceramic tile, stainless steel, NRP, wallpaper, wood, and even value-added FRP wall panels. Pebbled FRP wall panels are different from other wall covering materials and meet many of the "practical indicia" that courts rely on to define a relevant product market. As a result of pebbled FRP wall panels' blend of characteristics and performance, customers would not reduce purchases or switch away from pebbled FRP wall panels in sufficient numbers to make a SSNIP of pebbled FRP wall panels

unprofitable. Accordingly, the production and sale of pebbled FRP wall panels constitutes a relevant product market and line of commerce under Section 7 of the Clayton Act and Section 2 of the Sherman Act.

### B. The Production and Sale of Pebbled FRP Wall Panels in the United States Constitutes a Relevant Geographic Market

23. The United States is a relevant geographic market. A hypothetical monopolist of pebbled FRP wall panels in the United States would impose at least a SSNIP on some customers. This price increase would not be defeated by buyer responses, including substitution away from pebbled FRP wall panels, or by arbitrage, *e.g.*, customers purchasing pebbled FRP wall panels outside the United States. Accordingly, the sale of pebbled FRP wall panels to customers in the United States constitutes a relevant market and line of commerce under Section 7 of the Clayton Act and Section 2 of the Sherman Act.

## V. ANTICOMPETITIVE EFFECTS

24. The proposed acquisition would eliminate the fierce competition between Verzatec and Crane that exists today and unduly increase concentration in the already highly concentrated market for the sale of pebbled FRP wall panels in the United States. Indeed, the proposed acquisition would create a single dominant producer with over 80 percent of current sales and production capacity. With its new commanding position—unconstrained by its "biggest competitor" Crane—Verzatec would likely, among other things, raise prices, reduce quality, reduce levels of service, and eliminate excess capacity.

### A. The Proposed Acquisition Is Presumptively Unlawful

25. The Supreme Court has held that mergers and acquisitions that significantly increase concentration in an already concentrated market are presumptively anticompetitive and, therefore, presumptively unlawful. To measure market concentration, courts often use the

Herfindahl-Hirschman Index ("HHI"). HHIs range from 0 in markets with no concentration to 10,000 in markets where one firm has 100 percent market share. Courts have found that mergers that increase the HHI by more than 200 and result in an HHI above 2,500 in any market are presumed to be anticompetitive. Verzatec's acquisition of Crane would substantially consolidate the relevant market. Pre-merger, the market is already highly concentrated with an HHI of 3,848. Post-merger, the HHI is 7,048, resulting in an increase of 3,200 points. This dramatic increase caused by the merger creates a strong presumption that this merger is unlawful under Section 7 of the Clayton Act and significantly exceeds increases in concentration that courts have found to be presumptively anticompetitive.

> **B.    The Proposed Acquisition Would Eliminate Vigorous Head-to-Head Competition Between the Two Largest Producers of Pebbled FRP Wall Panels**

26. Verzatec and Crane are two of only three companies in the United States that customers turn to in order to supply pebbled FRP wall panels. In strategic plans and other business documents, Crane and Verzatec each routinely identifies the other as its most significant competitor. In its most recent strategic plan, for example, Verzatec stated that Crane "remains our biggest competitor." Defendants also routinely acknowledge in their internal documents that Verzatec, Crane, and a distant third competitor, Panolam, account for virtually all sales of pebbled FRP wall panels in the United States and regularly include market share charts depicting only these three firms in their strategic planning documents.

27. Defendants compete head-to-head to sell pebbled FRP wall panels to retail chains and building-supply distributors, resulting in lower prices, shorter delivery times, and better terms of service. In order to win, the Defendants closely monitor each other's prices and also compete against one another by offering financial incentives, including rebates, special pricing, and pre-paid freight, to entice distributors to carry their pebbled FRP wall panels. Such financial

incentives may be tied to distributors winning large building projects as a form of "bid support." In one instance, Verzatec offered a four percent lower price than Crane's reported price to a distributor in order to win a bid for a large construction project in Phoenix, Arizona. Verzatec also offered a distributor in the Southwest pricing concessions to prevent that distributor from switching to Crane to supply nine local outlets. Similarly, Crane approved lower pricing to "convert" a distributor from Verzatec to Crane. The proposed acquisition would eliminate this important competition and result in higher prices.

28. Unless enjoined, the proposed acquisition would create one dominant firm that controls substantially all of the relevant production capacity for pebbled FRP wall panels, daunting for even the nation's largest major home-improvement retail chains. These customers obtain lower prices and a higher level of service from Verzatec and Crane by pitting the firms against each other in periodic solicitations called "line reviews." These retailers use the persistent and ever-present threat of opening up a "line review" to obtain better prices and service from Verzatec and Crane. The proposed acquisition would eliminate this critical head-to-head competition.

29. Both Defendants have faced pressure from their retailer and distributor customers when the other pebbled FRP wall panel suppliers do not follow their price increase announcements. Crane and Verzatec closely monitor each other's price announcements and have matched some of the price decreases and increases instituted. For example, when Crane attempts to raise price, it closely monitors Verzatec's response, knowing that if Verzatec does not match the increase, pressure from customers and the threat of lost sales will require Crane to make concessions. In the words of one Crane executive, the "risk we run with a price increase announcement, which should not be discounted, is that our competitors do not follow suit."

30. Additionally, head-to-head competition between Verzatec and Crane has spurred the development of more efficient production lines in order to meet customer demand for pebbled FRP wall panels. The proposed acquisition would eliminate this important competition and empower Verzatec to reduce quality and potentially reduce production volumes for pebbled FRP wall panels.

31. Tired of competing with Crane for business, Verzatec is now opting to buy its biggest competitor. Its anticompetitive objectives are clear. In an internal company analysis reviewed by senior executives, Verzatec identified key acquisition objectives that included whether a transaction would allow the company to "modify the structure of the industry and make it more profitable," "reduce the number of participants in the market," and "'control' a competitor"—Crane checked all the boxes. Verzatec's executives were clear about the anticompetitive objectives of the transaction, including giving Verzatec "pricing and market control" by "improv[ing] distribution channel control" and "eliminate[ing] margin erosion caused by fierce competition [with Crane.]" Post-acquisition, Verzatec would be able to raise prices because most customers in the United States will have at most, one other distant option for the supply of pebbled FRP wall panels.

## VI. ABSENCE OF COUNTERVAILING FACTORS

32. New entry or expansion by existing competitors is unlikely to prevent or counteract the proposed acquisition's likely anticompetitive effects. The pebbled FRP wall panel market has significant barriers to entry or expansion. For example, Crane's investment bank has emphasized that "Crane Composites has built a moat around its customer relationships [through] a combination of competitive advantages . . . compared to international competitors that often run into supply chain issues." Similarly, Verzatec has recognized that numerous "entry barriers

represent a competitive advantage to [Verzatec]." Verzatec's CEO even touted that a benefit of the proposed acquisition is that the new company would be so powerful that it "prevents a 'new entrant' to participate as [a] competitor."

33. Based on competitive conditions and constraints, Panolam is unlikely to expand or constrain Verzatec from increasing prices if the proposed acquisition is completed. Panolam is a smaller manufacturer that has only one production line compared to four production lines owned by Defendants.

34. There are U.S. and foreign firms that currently manufacture and sell a high-grade FRP product to the recreational vehicle ("RV") industry, but these firms are unlikely to reposition to expand production of pebbled FRP wall panels. A substantial share of RV-grade FRP is produced through a batch process that is not suitable for high-speed production of pebbled FRP wall panels, which are produced on continuous-process lines. Because it is more difficult to produce, RV-grade FRP also earns higher margins than pebbled FRP wall panels. Due to the differences in both production methods and margins, it is unlikely that producers would divert production capacity from RV-grade FRP to pebbled FRP wall panels in the event of a price increase in pebbled FRP wall panels.

35. A new firm is unlikely to successfully enter and sell FRP in the United States. Verzatec and Crane have built rival production and warehouse networks in the United States and Mexico that they each integrate into the highly fragmented building-supply distribution network and the retail channel. Building a new manufacturing facility, or even introducing new equipment to an existing facility in the United States is expensive. Other firms seeking to enter the market or expand would need to spend a significant amount of time and money to acquire manufacturing equipment, build new facilities and accompanying infrastructure, and hire

qualified employees. Even after taking on this costly and time-consuming investment, without the scale of orders needed to operate efficiently, the firm would not be able to offer the same cost-effective distribution as Verzatec and Crane do today.

36. Entry by foreign suppliers will not be timely, likely, or sufficient to counteract the anticompetitive effects of the proposed transaction. First, many foreign firms do not have the same equipment as the Defendants to produce pebbled FRP wall panels. Foreign firms have previously tried and failed to enter the FRP wall panel market, due to barriers including lengthy supply chains, the high cost of ocean freight relative to the value of pebbled FRP wall panels, and the difficulty of obtaining effective distribution. The high cost of ocean freight in recent years has only increased this already substantial barrier to expansion by any foreign FRP producers. Verzatec itself just completed construction of a new PVC production line in the United States to avoid sourcing PVC from overseas due to supply chain issues.

37. Verzatec's claimed efficiencies are unsubstantiated and are not cognizable. For example, Verzatec claims that the acquisition will improve the combined firm's operations, but such improvements can be achieved by each Defendant independently, without the transaction eliminating the important competition between Verzatec and Crane. Moreover, any of the claimed efficiencies that arise from combining or consolidating production may actually harm competition by reducing available capacity in the industry. In short, pebbled FRP wall panel customers and the American businesses they serve will be better off if Verzatec and Crane continue to compete for their business.

## VII.  JURISDICTION AND VENUE

38. The United States brings this action under Section 15 of the Clayton Act, 15 U.S.C. § 25, and Section 4 of the Sherman Act, 15 U.S.C. § 4, to prevent and restrain Verzatec

from violating Section 2 of the Sherman Act, 15 U.S.C. § 2, and restrain Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18. This Court has subject matter jurisdiction over this action under Section 15 of the Clayton Act, 15 U.S.C § 25, Section 4 of the Sherman Act, 15 U.S.C. § 4, and 28 U.S.C. §§ 1331, 1337(a), and 1345.

39. Defendants Verzatec and Crane are engaged in interstate commerce and in activities substantially affecting interstate commerce. Verzatec and Crane manufacture and sell pebbled FRP wall panels throughout the United States. Defendants are engaged in a regular, continuous, and substantial flow of interstate commerce, and their FRP wall panel sales have had a substantial effect on interstate commerce.

40. This Court has personal jurisdiction over each Defendant. Both Verzatec and Crane are corporations that transact business within this district through, among other things, their sale of pebbled FRP wall panels. Crane's headquarters and its major manufacturing facility are located within this district.

41. Venue is proper in this judicial district under Section 12 of the Clayton Act, 15 U.S.C. § 22, and under 28 U.S.C. § 1391(b) and (c).

### VIII. VIOLATIONS ALLEGED

42. Verzatec's proposed acquisition of Crane is likely to substantially lessen competition and tend to create a monopoly, in interstate trade and commerce in the relevant market in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

43. In addition, Verzatec's proposed acquisition of Crane would eliminate Crane as a significant competitor, conferring both monopoly power and an approximately 80 percent share of the market to Verzatec. Accordingly, the proposed acquisition would allow Verzatec to unlawfully monopolize the market for the production and sale of pebbled FRP wall panels. The

proposed acquisition thus constitutes monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

44. The proposed acquisition would likely have the following anticompetitive effects, among others, in the relevant market:

    (a) Eliminating significant head-to-head competition between Verzatec and Crane;

    (b) Increasing prices of pebbled FRP wall panels;

    (c) Reducing the quality of pebbled FRP wall panels;

    (d) Reducing the levels of service to pebbled FRP wall panel customers; and

    (e) Reducing output of pebbled FRP wall panels.

## IX. RELIEF REQUESTED

The United States requests that the Court:

    (a) Adjudge Verzatec's acquisition of Crane to violate Section 7 of the Clayton Act, 15 U.S.C. § 18;

    (b) Adjudge Verzatec's acquisition of Crane to violate Section 2 of the Sherman Act, 15 U.S.C. § 2;

    (c) Permanently enjoin Defendants from consummating Verzatec's proposed acquisition of Crane, and from entering into or carrying out any other transaction by which control of the assets or business of Crane would be combined with Verzatec;

    (d) Award the United States its costs of this action; and

    (e) Grant the United States such other relief as the Court deems just and proper.

Respectfully submitted,

FOR PLAINTIFF UNITED STATES OF AMERICA:

JONATHAN S. KANTER
Assistant Attorney General for Antitrust

DOHA MEKKI
Principal Deputy Assistant Attorney General

CAROL L. SIPPERLY
Acting Deputy Assistant Attorney General

KATHLEEN S. O'NEILL
Senior Director of Investigations & Litigation

CRAIG W. CONRATH
Director of Litigation

PATRICIA C. CORCORAN
Acting Chief, Civil Operations

KATRINA ROUSE
Chief
Defense, Industrials, and Aerospace Section

JAY D. OWEN
Assistant Chief
Defense, Industrials, and Aerospace Section

JOHN R. LAUSCH, JR.
United States Attorney
Northern District of Illinois

THOMAS P. WALSH
Assistant United States Attorney
Northern District of Illinois
219 South Dearborn Street
Chicago, IL 60604

/s/ Lowell R. Stern
LOWELL R. STERN
ANGELA TING
STEPHEN HARRIS
MATTHEW HUPPERT
BASHIRI WILSON
MIRANDA ISAACS
Trial Attorneys
United States Department of Justice
Antitrust Division
Defense, Industrials, and Aerospace Section
450 Fifth Street, NW, Suite 8700
Washington DC 20530
Tel.: (202) 514-3676
E-mail: Lowell.Stern@usdoj.gov

TAI MILDER
Trial Attorney
United States Department of Justice
Antitrust Division
450 Golden Gate Avenue
San Francisco, CA 94102-3478

Attorneys for the United States